Filed 6/16/16  In re N.O. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.O. et al., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D069529 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. J518985 D/E) |
| V.R. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and orders of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

Katherine A. Clark, under appointment by the Court of Appeal, for Defendant and Appellant V.R.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Jorge O.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Appellants V.R. (Mother) and Jorge O. (Father) appeal a juvenile court judgment terminating their parental rights to N.O. and J.O., born in 2011 and 2012 (the children), and choosing adoption as the appropriate permanent plan. (Welf. & Inst. Code, § 366.26; all further statutory references are to this code unless noted.) Mother also appeals the court's denial of her modification petitions seeking resumption of her reunification services and delay in the permanency planning. (§ 388.)

On appeal, Mother contends the court abused its discretion in denying her an evidentiary hearing on her requests to modify the orders terminating reunification services. She argues the court should have found she made a prima facie case of significantly changed circumstances, based on her participation in recent months in visitation with the children and related classwork, although her reunification services had earlier been terminated. (§ 361.5, subd. (a)(1)(B), (C) [short reunification period for parents of very young children/sibling group].)

Mother also joins in arguments made by Father regarding the preservation of the parental relationship. Father takes the position that no sufficient evidence supports the court's finding of the inapplicability of an exception to adoption preference, based upon his showing of his beneficial parent-child relationship. (§ 366.26, subd. (c)(1)(B)(i); *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 (*Autumn H.*).)

2

The children's counsel filed a letter joining in the Agency's respondent's brief. They each contend the record shows no abuse of judicial discretion or lack of supporting evidence. We agree and affirm the judgment and order.

I

*BACKGROUND*

A. Jurisdiction, Disposition, and Termination of Reunification Services

The children were ages 1 and 2 on May 20, 2014, when the Agency filed its dependency petition alleging they were at substantial risk of suffering serious physical harm due to the failure or inability of the parents to supervise or protect them adequately. (§ 300, subd. (b)(1).) The week before, the children were exposed to a violent confrontation between the parents that involved Father threatening Mother, with a knife and then getting on his motorcycle and chasing her and the children in their car, resulting in a crash. Both parents had histories of substance abuse and related arrests. There were three other half-siblings in the home (not parties to these proceedings), who also became the subjects of their own dependency petitions due to troubles arising out of the fighting between Mother and Father, which led to numerous referrals to the Agency. From July 2013 through March 2014, the parents participated in voluntary services from the Agency, but there was no improvement in the risk factors for the children.

After the petitions were filed for these two children, they were taken into protective custody and detained together in foster care. Each parent had separate, supervised visits, which went well. The court made its jurisdictional and dispositional findings in September 2014, and the children were briefly placed in the home of their

3

paternal grandmother.  However, the children had to be moved back to the foster home when the Agency learned there were allegations of physical abuse by the paternal grandmother toward two of her older grandchildren.

The parents were provided with reunification services and placed on notice that such services could be terminated after six months, due to the relatively young age of the children.  (§ 361.5, subd. (a)(1)(B), (C).)  Both parents had positive drug tests and were referred to substance abuse treatment.  After November 2014, Mother did not visit the children and dropped out of sight for several months.

In late 2014, Father was dropped from his domestic violence education class for excessive absences.  As of February 2015, he had just begun residential treatment at "CRASH," a substance abuse recovery program, and he was participating in weekly supervised visits with the children there.  After about a month, he left the residential program but began an outpatient program and individual therapy, in March 2015.

In the Agency's six-month review report, it recommended that reunification services for the parents be terminated, due to their lack of compliance.  The Agency was investigating placement possibilities with the maternal grandfather, J.R., who lived in Tijuana and who was involved with the other half-siblings.

The children's court appointed special advocate (CASA) worker submitted a March 2015 report indicating that she had interviewed the foster mother, who said that Mother had not been visiting at all.  Father usually came to his planned visits, but when he didn't, both children became upset and showed difficult behaviors.

4

At the contested six-month review hearing on April 10, 2015, the court found the Agency had provided each parent with reasonable services. The court made a finding that return of the children to parental custody would be detrimental, and the services provided had been reasonable. The parents had not made substantive progress with the provisions of their case plans. The court terminated services and scheduled a permanency planning hearing for August 2015. (§ 366.26.)

Father filed a request to challenge the orders of the juvenile court at the six-month review hearing. (Cal. Rules of Court, rule 8.452.) However, this Court dismissed the case on May 26, 2015 after Father's attorney indicated there were no viable issues for review.

As of the August 2015 assessment report date, the Agency's social workers were still investigating placement possibilities with the maternal grandfather in Tijuana, and the hearing was continued until October and then December 2015. The foster caregivers gave notice to the Agency that they were not available to the children as a permanent home. The Agency was also investigating placement possibilities with the paternal grandmother, but was having difficulty getting information. In August 2015, the children were placed in the home of a nonrelative extended family member (NREFM or the caregiver), who wanted to adopt both of them.

Between May and August 2015, Father came to all 10 of his planned visits. Mother's whereabouts remained unknown until September 2015, when she was arrested for drug and fraud offenses and placed in custody. She anticipated a 10-month sentence would be imposed. Through October 2015, Father continued to carry out his weekly

5

supervised visits, acting in a loving and appropriate manner.  The Agency was still investigating the suitability and physical safety of the homes of each set of grandparents, including the backgrounds of the other people who lived there.

The Agency's social worker reported in August 2015 that in her opinion, the children would not suffer detriment if the parental rights were terminated.  The CASA volunteer concurred, although she was unable to take a position on placement due to the Agency's pending relative investigations.  The Agency recommended a permanent plan of adoption.  Father's visitation had become regular since March 2015, but he appeared to be relating to the children more as a visiting relative rather than a parent.  Mother had resumed visiting but had not developed much of a parental relationship, and the children seemed to view her as an extended family member.  The NREFM caregivers were committed to adoption.  Alternatively, there were 33 approved adoptive homes interested in a sibling set like N.O. and J.O.

### B.  Modification Motions; Permanency Planning Hearing

While the contested permanency planning hearing was being continued from October until December 2015, Mother filed two modification petitions and Father filed one.  Mother sought modification of the orders terminating her reunification services and setting further hearings.  Mother explained that from January through September 2015, she had been held against her will by an abusive boyfriend in Mexico, making it impossible for her to see the children.  She requested that her services be reinstated, based on her recent enrollment at her custodial facility in classes about anger management and parenting, as well as NA meetings.  She was having supervised

6

visitation with the children, who were affectionate toward her. She was on the waiting list for a residential substance abuse treatment program, to be admitted upon her release and when there was an opening.

On the first petition, the court determined that no prime facie case had been established of changed circumstances, and denied the request for a hearing on the petition.

In Father's modification request, he asserted that placement should be made with the paternal grandmother, who had recently been approved by the Agency for providing long term care for the children. The Agency submitted an addendum report opposing the modification request, pointing out that although the paternal grandmother clearly loves the children, she had not maintained a relationship with them since they were removed from her home in September 2014. She had not called the current caregivers, except once to ask about Father's visit. The Agency's reports also stated that as of November and December 2015, when N.O. talked to Father, she used his first name. J.O. called him by the name of the caregiver's husband or by his first name. Both children called their caregivers Mommy and Daddy.

Although the court made a preliminary finding that Father had made a showing of his ongoing contact and visitation with the children, the court did not order an evidentiary hearing on the petition. Father had not made a prima facie showing the requested change of placement was in the best interests of the children.

On the trial date for permanency planning, Mother filed an additional modification petition seeking additional services, on the grounds she had completed a parenting class

and was on a waiting list for another one. The court took her previous modification filing into account and found that together, they did not establish that an evidentiary hearing on modification would be justified. Even though Mother had just made some showing that her circumstances were beginning to change, she had still failed to make any prima facie showing the requested change was in the best interests of the children.

The court proceeded to the permanency planning issues and reviewed the Agency and CASA reports, and the 169-page log of Father's supervised visitations. Mother testified about her love for the children and her five supervised visits with them since September, which went well. She opposed the plan of adoption.

The social worker testified that she had reviewed the file, including the documentation of Father's visits, but her recommendation had not changed, to select adoption as the children's permanent plan.

At the close of the hearing, the court found the children were adoptable, and Father's asserted exception to adoption found in section 366.26, subdivision (c)(1)(B)(i) did not apply (not a beneficial parental relationship). Parental rights were terminated and adoption was chosen as the permanent plan best suited to promote their best interests. Each parent has appealed.

DISCUSSION

I

*MODIFICATION MOTION*

A.  Applicable Standards:  Two Prongs; Prima Facie Case

As the petitioner, Mother had the burden to show by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the children.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Jasmon O*. (1994) 8 Cal.4th 398, 415; § 388, subd. (a).)  To trigger the right to a hearing on the petition, she needed to set forth a prima facie showing of both of those elements.  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*).)  Although the court must broadly construe the requests for modification, "if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition.  [Citations.]  The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition."  (*Ibid*.)

In deciding whether the petitions make the necessary showing, the juvenile court may consider the entire factual and procedural history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)  The modification factors to be considered include (1) the seriousness of the problem leading to the dependency; (2) the relative strength of the child's bonds with the parent and with the caretaker; (3) the degree to which the problem

9

could be easily resolved. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) If it is apparent that the best interests of the child may be promoted according to the material in the modification request, a hearing shall be ordered. (*Id.* at pp. 526-527, fn. 5.)

This court reviews the grant or denial of petitions for modification under section 388 for abuse of discretion. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) We inquire if the lower court exceeded the limits of legal discretion by making any arbitrary, capricious, or patently absurd determinations. (*In re Stephanie M.*, *supra*, 7 Ca1.4th at p. 318; *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

### B. Analysis: Changed Circumstances and Best Interests

On appeal, Mother contends she was entitled to an evidentiary hearing on her claims of significant changes of circumstances that affected the best interests of the children. She points out that from the outset of the case in May 2014 until she became unavailable in January 2015, she had visited and called the children at their foster home. Upon her return to the area in September 2015, she began to make progress in changing her circumstances, as the court acknowledged at the hearing. The children knew Mother and were not afraid to visit, and they were all affectionate with one another. Mother was developing her existing bond with the children, and further assistance to her would most likely promote their best interests. (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 530-532 [best interests analysis].)

In making its rulings, the court reviewed the file, determining Mother had failed to meet her burden of making a prima facie case, such that no evidentiary hearings were

10

required.  These findings are well supported.  Although Mother provided the court with some evidence to show she may be changing to improve her ability to parent, the efforts she showed were of relatively recent origin and had not yet fully addressed the essential issues that brought the children into the dependency system.  The facts she alleged would not have supported a conclusion that the children's best interests would be served by the modifications she was requesting.  (*Zachary G., supra*, 77 Cal.App.4th at p. 808.)  In connection with ruling that Mother's parental rights were terminated, the court observed that the relationship she had developed with the children was not parental in nature.  The children were evidently experiencing the NREFM's home as stable, caring and permanent, and continued visitation with Mother at her custodial facility in the immediate future was not demonstrated to be likely to serve their interests.

Even construing Mother's petitions liberally, they fail to set forth facts to show that the best interests of the children might be promoted by the proposed changes in the orders.  (*In re Angel B.* (2002) 97 Cal.App.4th 454, 463.)  As such, it was not error to proceed without granting hearings on the petitions.  This was not, as Mother alleges, a denial of procedural due process, in view of the numerous safeguards and opportunities built into the statutory scheme.  (*Id.* at p. 461.)  On this record, it was not an abuse of discretion for the juvenile court to conclude that the petitions did not, even liberally construed, require that hearings be granted on them.

11

## II

### *TERMINATION OF PARENTAL RIGHTS*

It is not disputed that these children are likely to be adopted, either by the NREFM, or by other approved San Diego County families interested in adopting such a sibling set. Father sought a ruling that the beneficial parental relationship exception to adoption properly applies to this case. (§ 366.26, subd. (c)(1)(B)(i); *Autumn H., supra,* 27 Cal.App.4th at p. 575.) He argues that insufficient evidence supported the court's decision to terminate his parental rights, in light of the strength of the bond he had maintained through his consistent visitation with the children. Mother joins in his arguments.

### A. Applicable Standards; Two Prongs

The preference for adoption will not apply if termination of parental rights would be detrimental to the child because the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i); *Zachary G.*, *supra*, 77 Cal.App.4th at p. 809.) "Regular visitation and contact" are statutory threshold requirements for a claim that this beneficial parental relationship has been maintained. (§ 366.26, subd. (c)(1)(B)(i).) The juvenile court appropriately noted that Father had satisfied the first statutory prong, that a parent continue regular visitation and contact with the children. (*Ibid.*)

The criteria for applying the beneficial parental relationship exception go on to a consideration of a preliminary factual issue, whether the parent proved the existence of a relationship with the children that is parental in nature. (See *In re J.C.* (2014) 226

12

Cal.App.4th 503, 531; *In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.) In this instance, the court acknowledged that within the context of supervised visitation, Father acted in a parental role toward the children.

The trial court's determination of benefit from continuance of the relationship has a discretionary component. (*In re Anthony B.* (2015) 239 Cal.App.4th 389, 395.) In applying the terms of section 366.26, subdivision (c)(1)(B)(i), the court must balance "the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Autumn H., supra,* 27 Cal.App.4th at p. 575.) The court must find "a compelling reason for determining that termination would be detrimental to the child" (§ 366.26, subd. (c)(1)(B)), due to the parent's regular visitation and contact with the child, coupled with benefit to the child from continuing the relationship. (*In re C.F.* (2011) 193 Cal.App.4th 549, 553.)

Even without day-to-day contact and interaction, a parental relationship may be so "strong and beneficial" that "termination of parental rights would be detrimental to the child." (*In re C.F., supra*, 193 Cal.App.4th at p. 555, fn. 5.) More than "some measure of benefit" must be conferred through the relationship with the requesting parent. (*Id.* at pp. 558-559.) " 'Interaction between [a] natural parent and child will always confer some incidental benefit to the child.' " (*Id.* at p. 555.) The parent must show he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment between child and parent. (*Autumn H., supra,* 27 Cal.App.4th at p. 575.)

13

The juvenile court considers the benefit issue on a case-by-case basis, taking into account the many variables that can affect the parent-child relationship. (*Autumn H., supra*, 27 Cal.App.4th at pp. 575-576; *In re J.C., supra*, 226 Cal.App.4th at p. 532.) Among the variables to be considered in evaluating the benefits in a parental relationship are the child's age, the amount of time the child spent in the parent's care, whether the interactions are positive or negative, and whether the child has particular needs that the parent can satisfy. (*In re Angel B., supra,* 97 Cal.App.4th at p. 467.)

"It is the trial court's role to assess the credibility of the various witnesses, to weigh the evidence to resolve the conflicts in the evidence. We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence." (*In re Casey D., supra,* 70 Cal.App.4th at pp. 52-53.) In reviewing the sufficiency of evidence, the reviewing court makes presumptions in favor of the judgment, views the evidence in the light most favorable to the Agency as prevailing party, and gives the judgment the benefit of all reasonable inferences. (*In re C.F., supra,* 193 Cal.App.4th at p. 553; *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

B. Application of Criteria: Benefits of Parental Relationship

These proceedings addressed in several ways the issue of substantial or incidental benefit from Father's relationship to the children. In the assessment reports, the social worker who had observed visitation noticed that recently, each of the children had started calling Father by his first name, or "Papi J." J.O. sometimes called Father by the name of the current caregiver's husband. In November 2015, N.O. told the social worker that she

14

enjoyed visiting with Father but wants to live with her caregivers. The social worker was concerned that Father had not addressed his underlying problems, including addiction, or progress beyond supervised visitation, and he had been unable to regain custody of his older children.

In making its ruling, the court observed that despite some instabilities in Father's life, he had made very good efforts to visit and act in an engaging and loving way toward the children. Within the confines of supervised visitation, he acted in a parental role, but at the young age of these children, their needs were for a greater degree of stability and attachment than he had shown he was able to provide. The paternal grandmother, with whom he sought placement, had not demonstrated a consistent interest in the children, on his behalf. The caregivers were seen to be the ones who were meeting the children's medical, developmental, and emotional needs.

The record supports the court's key finding that the children did not view Father as dominantly or primarily a parental figure. Over 16 months, they saw him one day per week, and this had evidently not been enough for them to develop with him a significant and positive parent-child attachment, such that losing it would be to their detriment. (*Autumn H., supra,* 27 Cal.App.4th at p. 575; *In re C.F., supra,* 193 Cal.App.4th at pp. 558-559 [parent cannot establish applicability of parent-child beneficial relationship exception with a showing the child derives only a small measure of benefit from maintaining parental contact].)

Under any applicable review standard, the juvenile court had an adequate basis in the record to conclude that the circumstances of the children's lives did not include any

15

special needs that only Father could satisfy. (*In re Angel B., supra,* 97 Cal.App.4th at pp. 467-468; *In re Anthony B., supra,* 239 Cal.App.4th at p. 395.) This exception to the adoption preference was not shown to apply here, without indications of substantial, overriding benefit to the children if their parental relationship with Father were continued. (*Autumn H., supra,* 27 Cal.App.4th at pp. 575-576; *In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

## DISPOSITION

The judgment and orders are affirmed as to both appellants.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.